# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMARI COMPANY, INC., a Massachusetts corporation, *et al.*, | )<br>)<br>) |
| Plaintiff, | ) Case No. 07 C 1425 |
| v. | ) Judge Elaine E. Bucklo |
| JOHN R. BURGESS, *et al.*, | ) Magistrate Judge<br>) Martin C. Ashman |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion by Plaintiffs Amari Company, Inc., *et al.*, ("Plaintiffs") entitled "Plaintiffs' Motion to Freeze the Assets of Defendant John Burgess." Although Plaintiffs do not call it a motion for a preliminary injunction, it is apparent from the relief requested and the arguments Plaintiffs raise in support of their motion that Plaintiffs seek a preliminary injunction restraining the assets of Defendant John Burgess ("Burgess"). For the reasons stated below, Plaintiffs' motion for a preliminary injunction is denied.

### I. Background

The facts of this case are discussed at length in Judge Bucklo's Memorandum Opinion and Order of December 4, 2007, denying Defendants' motion to dismiss. *See Amari Co., Inc. v. Burgess*, No. 07 C 1425, 2007 WL 4292885, at *1-3 (N.D. Ill. December 4, 2007). The Court will provide only a brief synopsis here. Plaintiffs are a group of approximately forty businesses from around the country who have in common the belief that they were swindled by individuals

employed by or associated with International Profit Associates, Inc., ("IPA") an Illinois corporation. (Amended Compl., ¶ 279-293.) In their complaint, Plaintiffs allege that Burgess and several co-defendants engaged in a pattern of fraudulent activity under the auspices of IPA that violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Amended Compl., ¶ 279-293.) The alleged fraud at the heart of this scheme involved the sale of increasingly expensive business consulting services to small and medium-sized companies with the goal of extracting as much money as possible from the client rather than providing helpful business advice. (Amended Compl., ¶¶ 62-141.) In their complaint, Plaintiffs refer to Burgess as "Defendant King Pin," alleging that he controlled IPA's operations and "conceived and executed" the fraudulent scheme. (Amended Compl. ¶ 41.)

This suit was initiated in March 2007. After Plaintiffs' motion for recusal was granted and the case was reassigned in May 2007, Plaintiffs filed an amended complaint in July 2007. Defendants responded with a motion to dismiss in August, which was denied in the December 2007 opinion referenced above. Shortly thereafter, Plaintiffs filed the instant motion to freeze Burgess's assets, which Judge Bucklo referred to this Court pursuant to Local Rule 72.1. After the referral, the motion was fully briefed, and oral argument was held on January 23, 2008. At oral argument, Plaintiffs agreed with the Court that their motion should be treated as a motion for a preliminary injunction. The parties also agreed that the motion should be decided on the papers and declined the opportunity to hold an evidentiary hearing. Plaintiffs did, however, express an intent to "incorporate" a number of exhibits that they had filed in response to Defendants' motion to dismiss as evidentiary support for their current motion. Plaintiffs further

requested that any denial of their motion be without prejudice so that they would be able to re-file the motion after gaining additional factual support through the discovery process.[1]

## II. Discussion

Plaintiffs' argument in support of their motion is simple: Burgess's assets must be frozen now in order to prevent him from dissipating or hiding them before Plaintiffs can obtain a final judgment. Plaintiffs' brief notes that the prayer for relief in their amended complaint includes a request for equitable relief pursuant to § 1964(a) of the RICO statute, including an equitable accounting. At oral argument, counsel for Plaintiffs indicated that they may also seek the imposition of a constructive trust on Burgess's funds in order to recover money obtained through the alleged scheme of fraud. Although this point is not entirely clear, Plaintiffs appear to argue that a preliminary injunction is available to them as an interim remedy pursuant to § 1964(a). As an alternative basis for the injunction, Plaintiffs assert that the Court has inherent authority to freeze all of Burgess's assets in order to ensure that Plaintiffs' remedies, should they prevail, will be effective. Although their brief does not acknowledge that they seek a preliminary injunction, Plaintiffs' arguments are patterned on the familiar preliminary injunction standard articulated by the Seventh Circuit in cases such as *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir. 1984). In accordance with that standard, Plaintiffs argue that provisional relief is appropriate because (1) they are likely to prevail on the merits of the case; (2) they will experience immediate and irreparable harm if the injunction is denied; (3) they lack an adequate

---

[1] Although Plaintiffs filed suit in March 2007, the parties did not begin discovery until January 23, 2008.

remedy at law; (4) the balance of hardships favors them; and (5) the interest of the public at large favors the injunction.

Although Plaintiffs have not clearly distinguished them, there are two distinct issues implicated by their request for preliminary injunctive relief in this case. First, is the injunction they seek authorized by the remedial provisions of the RICO statute? If not, the question becomes whether the Court has the inherent power to grant preliminary relief because Plaintiffs have met the preliminary injunction standard articulated in *Roland Machinery*. The Court answers both questions in the negative.

### A.     RICO Remedies: Section 1964(a)

In arguing that they are entitled to a preliminary injunction, Plaintiffs point to their prayer for equitable relief pursuant to § 1964(a) of RICO. Therefore, § 1964(a) is a logical starting point in determining whether such relief is appropriate. The plain language of the statute indicates that it is not. It is true that the statute authorizes district courts to issue orders that are injunctive in nature, such as orders requiring the divestment of "any interest . . . in any enterprise" and "imposing reasonable restrictions on the future activities . . . of any person." 18 U.S.C. § 1964(a). However, the first clause of § 1964(a) makes clear that this power exists only "to prevent and restrain violations of section 1962." *Id.* This limiting language clearly indicates that the equitable remedies authorized by § 1964(a) are available only to prevent future conduct that is prohibited by RICO. The statute does not authorize injunctions to address past wrongs, which is essentially what Plaintiffs seek to do by freezing Mr. Burgess's assets in order to secure payment of a judgment based on his past conduct.

While the Seventh Circuit has not explicitly held that § 1964(a) authorizes only prospective relief, other courts have adopted this interpretation. *See, e.g., United States v. Phillip Morris USA, Inc.*, 396 F.3d 1190, 1198 (D.C. Cir. 2005); *Richard v. Hoechst Celanese Chemical Group, Inc.*, 355 F.3d 345, 355 (5th Cir. 2003); *United States v. Carson*, 52 F.3d 1173, 1182 (2d Cir. 1995). Furthermore, this interpretation is consistent with Seventh Circuit precedent interpreting the three remedial provisions of § 1964, which has distinguished between the forward-looking injunctive relief available to all plaintiffs pursuant to § 1964(a) and the additional preliminary relief authorized by § 1964(b), which is available to the Attorney General only. *See National Organization of Women v. Scheidler*, 267 F.3d 687, 696 (7th Cir. 2001), *rev'd on other grounds by Scheidler v. National Organization for Women*, 537 U.S. 393 (2003) (stating that § 1964(b) provides "additional remedies, all in the nature of interim relief, that the government may seek."). Therefore, there is no basis in § 1964(a) for the preliminary injunction Plaintiffs seek: even if the Court were to ignore the clear import of the terms "prevent and restrain," which indicate that only forward-looking injunctive relief is available, their motion would still fail because only the Attorney General may seek *preliminary* injunctive relief.

### B. Inherent Authority To Grant a Preliminary Injunction

As discussed above, Plaintiffs seek an equitable accounting and possibly a constructive trust in order to disgorge what they claim are Burgess's ill-gotten gains. Plaintiffs argue that the Court has inherent authority to freeze Burgess's assets—which is tantamount to issuing a preliminary injunction—in order to preserve them until Plaintiffs can obtain a final judgment granting injunctive relief. Several hurdles stand in Plaintiffs' way.

First, as discussed above, it appears that § 1964(a) does not authorize injunctive relief to remedy past conduct. Therefore, it is at best questionable whether Plaintiffs can ultimately prevail on their equitable accounting and constructive trust theories. Of the three cases Plaintiffs cite to support the viability of their claims for equitable relief, two—*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749 (2d Cir. 1996) and *Reebok Int'l Ltd. v. Marnatech Enterp., Inc.*, 737 F. Supp. 1515 (S.D. Cal. 1989)—are inapposite because they deal with Lanham Act claims, not RICO claims. The third—*Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988)—did involve RICO claims, but does not help Plaintiffs because the preliminary injunction in that case was based on pendent state-law claims, not the RICO claims. *See Marcos*, 862 F.2d at 1359 (stating that the alleged conversion of public funds "support[ed] not only plaintiff's RICO claims *but also* the eight claims for conversion, fraud and deceit, constructive fraud, *constructive trust*, breach of implied contract, quiet title, *accounting*, and subrogation." (emphases added)).[2] The second obstacle Plaintiffs face is § 1964(b), which indicates that only the Attorney General may obtain interim injunctive relief under RICO. This restriction on the availability of preliminary injunctions would be vitiated if courts were to bypass the statute and grant the forbidden relief on the basis of "inherent power." A final obstacle is what the Supreme Court has described as "the well-established general rule that a

---

[2] The Court also notes that Plaintiffs' potential constructive trust claim is suspect in that Plaintiffs do not identify any specific property to which Burgess gained title by fraudulent means. Rather, they have indicated that they intend to pursue a constructive trust over his assets generally. This is at odds with the Seventh Circuit's doctrine regarding constructive trusts as an equitable remedy: "[I]f all that the plaintiff is seeking is a sum of money equal to the defendant's profit, an order of restitution will do fine . . . and the device of a constructive trust is surplus; the device comes into its own only when the plaintiff is seeking title to specific property in the defendant's hands." *Williams Elec. Games, Inc. v. Garrity*, 366 F.3d 569, 577 (7th Cir. 2004).

judgment establishing [a] debt was necessary before a court of equity would interfere with the debtor's use of his property." *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 321 (1999). To the extent that Plaintiffs seek monetary compensation for Burgess's alleged fraud, the "well-established rule" holds that they must obtain a judgment first and then restrain Burgess's assets, rather than the other way around.

Assuming for the sake of argument that these obstacles could be overcome, Plaintiffs would be entitled to a preliminary injunction only if they were able to demonstrate that (1) they are likely to prevail on the merits of the case; (2) they will experience immediate and irreparable harm if the injunction is denied; (3) they lack an adequate remedy at law; (4) the balance of hardships favors them; and (5) the interest of the public at large favors the injunction. *See Roland Machinery*, 749 F.2d at 382-83. Because the Court finds that Plaintiffs have not shown a likelihood of success on the merits or that immediate and irreparable harm will occur if the injunction is not granted, Plaintiffs' motion must be denied.

### 1. Likelihood of Success on the Merits

Plaintiffs stated at oral argument that they wish to have this motion decided on the papers. In their brief, Plaintiffs argue that they "have thoroughly shown the great likelihood of success on the merits while briefing Defendants' Motion to Dismiss." (Pl.'s Br. at 3.) If Plaintiffs are suggesting that Judge Bucklo's denial of Defendants' Rule 12(b)(6) motion to dismiss shows that they are likely to succeed on the merits of the case, they are mistaken. While the Supreme Court may have heightened the standard for pleading with its recent decision in *Bell Atlantic Corp. v. Twombly*, this standard, which Judge Bucklo applied in denying Defendants' motion, requires

only that a plaintiff's factual allegations "be enough to raise a right to relief above the speculative level." 550 U.S. ___, 127 S. Ct. 1955, 1965 (2007); *Amari*, 2007 WL 4292885, at *3. Judge Bucklo's opinion addresses only the sufficiency of the pleadings, assuming all well-pleaded facts in the complaint to be true. *Amari*, 2007 WL 4292885, at *3. In a trial on the merits, of course, Plaintiffs would not be entitled to that assumption. Therefore, the mere fact that Plaintiffs' complaint survived Defendants' Rule 12(b)(6) motion does not show a likelihood of success on the merits.

At oral argument, however, counsel for Plaintiffs indicated that it was not surviving the motion to dismiss that demonstrated Plaintiffs' likelihood of success. Rather, Plaintiffs' counsel stated that the reference to the motion to dismiss in Plaintiffs' brief was meant to "incorporate" the exhibits that Plaintiffs filed with their memorandum opposing the motion to dismiss. The Court notes that Plaintiffs' intent to "incorporate" their exhibits from another motion before another judge was not apparent from the single oblique reference to the motion to dismiss in Plaintiffs' brief. Furthermore, it is not clear that the affidavits and declarations that Plaintiffs filed in conjunction with their memorandum on the motion to dismiss are even properly before the Court. They were filed before another judge in connection with another motion, and even in the context of that motion they were extraneous, as a Rule 12(b)(6) motion must be decided on the basis of the well-pleaded complaint alone, without reference to extrinsic factual information. *See* Fed. R. Civ. P. 12(b)(6); *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000) (Rule 12(b)(6) motion was properly granted where complaint was "deficient on its face, without reference to other pleadings or exhibits."). There is no evidence that Judge Bucklo relied in any

way on Plaintiffs' exhibits.[3] Therefore, the Court doubts that Plaintiffs' affidavits, not filed with the Court in conjunction with this motion and inappropriately filed in conjunction with another motion, can form the factual basis for a preliminary injunction. To accept this evidence would be unfairly prejudicial to Burgess. Like the Court, Burgess cannot be expected to read Plaintiffs' minds; he must rely on what is set out in Plaintiffs' briefs and pleadings. The meaning of the vague reference to the motion to dismiss in Plaintiffs' brief was not apparent, and therefore Burgess lacked notice of Plaintiffs' plan to rely on the affidavits. Basic concerns of fairness dictate that Burgess was entitled to notice and a meaningful opportunity to present his own evidence or discredit Plaintiffs' evidence.

Plaintiffs' evidentiary sleight-of-hand is ultimately unimportant, because even when the affidavits and declarations are taken into account, they fail to establish that Plaintiffs are likely to prevail on the merits. The bulk of Plaintiffs' evidence is a series of formulaic declarations by various individuals stating that they hired IPA to perform a business evaluation, but instead received "a lecture on how bad I was managing my company [sic]"[4] and a sales pitch for further consulting services. (*See* Dkt. No. 60-15, pp. 2-106.) While each declaration provides a specific business name and specific dates on which IPA initially contacted the declarant, the remainder of each declaration consists of boilerplate allegations that are vague and conclusory in nature. The weakness of the declarations is compounded by the nature of this case and this motion: Plaintiffs' attempt to aggregate all of their evidence against all defendants does not override the fact that

---

[3] Judge Bucklo's opinion does reference "exhibits," but it is clear in the context of the opinion that these are the exhibits attached to the complaint, not the exhibits offered in opposition to the motion to dismiss. *Amari*, 2007 WL 4292885, at *4, 5.

[4] The language of each declaration is substantially, if not completely, the same.

this is a case with forty plaintiffs and several defendants, one of whom is Burgess, the target of the instant motion. It is not enough that Plaintiffs show, in general, that they are likely to prevail. Each plaintiff must have a likelihood of success on the merits against Burgess, who is not mentioned by name in any of the declarations. Assuming for the sake of argument that the declarations demonstrate a fraudulent scheme, they do not tie Burgess to the scheme. Therefore, the declarations do not establish a likelihood of success on the merits against Burgess, which is the critical inquiry in this motion because it is Burgess's assets that Plaintiffs seek to freeze.

The remainder of Plaintiffs' evidence is a series of substantially identical declarations signed by former IPA employees to the effect that they were trained and encouraged to engage in fraudulent activities during their employment with IPA. (*See* Dkt. Nos. 60-16, 17, 18, 19, 20, 21 and Dkt. No. 63.) These declarations rise above the level of the others in that they mention Burgess by name. However, the declarations are fatally flawed because they are vague and conclusory. The declarations state that Burgess "managed" or "controlled" "all aspects" of "the various companies he owned." They allege that the employees were trained in deception "by Burgess, or at his direction." Some, like the declarations of Thomas Crumpton and Gordon Fransden (Dkt. Nos. 60-18 and 60-19, respectively), go further and state that "[t]he Business Analysis too often was a fraud and the corporate office knew it." At best, these assertions are a composite of opinion, legal conclusion, and fact. To the extent that they are factual, they are vague and do not describe definite acts by specific individuals at specific times and places. Like the declarations of the Plaintiffs, these declarations may contain some admissible evidence with probative value, but they fall far short of establishing a likelihood that Plaintiffs will succeed on

the merits. Because Plaintiffs' proffered evidence does not demonstrate a likelihood of success on the merits, their motion to freeze Burgess's assets must be denied.

2. Immediate and Irreparable Harm

Plaintiffs' motion to freeze Burgess's assets also fails because Plaintiffs have not demonstrated that they will suffer immediate and irreparable harm in the absence of an injunction. Plaintiffs allege that Burgess is likely to dissipate or hide his assets during the course of this litigation in order to frustrate their ability to enforce a final judgment against him. Plaintiffs have no evidence that Burgess is actually in the process of dissipating or secreting assets. Instead, they rely on Burgess's admission, in proceedings related to his 1987 disbarment in New York, that he failed to return a fee to a client as directed by the Social Security Administration and that he commingled client funds with his office account. (Pls.' Br. at 3-4, citing *In re Burgess*, 128 A.D.2d 169, 170-71 (N.Y. App. Div. 1987).) The Court finds that this evidence does not demonstrate a likelihood that Burgess is hiding funds in the current case. The conduct addressed in the disciplinary proceeding may have been inappropriate and unethical for a lawyer, but bad acts that took place twenty years ago and are of a different nature than the conduct alleged today are weak evidence, if they are admissible at all. *See* Fed. R. Ev. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). Therefore, Plaintiffs' motion must fail because they have not shown that they will suffer immediate, irreparable harm if Burgess's assets are not frozen.

## C. Terms of the Denial

At oral argument, Plaintiffs asked that any denial of their motion be without prejudice, so that they could re-file it with additional evidence that might be uncovered during the discovery process. The Court has no obligation to entertain serial motions filed "one at a time . . . to suit a litigant's convenience." *Divane v. Krull Elec. Co., Inc.*, No. 95 C 6108, 2002 WL 31844987, at *1 (N.D. Ill. December 18, 2002). Rather, the Court will exercise its discretion to allow successive motions raising the same issue only when "good reasons" exist. *See Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995). In this case, a successive motion on this issue would be necessary only because Plaintiffs elected to bring the instant motion at a time when factual support for their allegations was almost completely lacking, consuming not only their own resources but those of the Court and Defendant Burgess. The fact that Plaintiffs acted precipitously in bringing this motion does not constitute "good reason" to raise the issue again. At the same time, the Court is wary of depriving Plaintiffs of all recourse in the event that they do discover evidence that assets are being dissipated or hidden and that the other obstacles discussed above have been overcome. Therefore, the motion will be denied, and Plaintiffs may file another motion to freeze Burgess's assets only with prior leave of Court. This will ensure that any subsequent motion will have a basis in fact rather than the innuendo Plaintiffs have relied on here.

### III. Conclusion

For the reasons stated above, Plaintiffs' Motion to Freeze Assets of Defendant John Burgess is denied.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: January 28, 2008.