**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMARI COMPANY, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07 C 01425 |
| | ) | |
| JOHN R. BURGESS, et al., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs, sixteen businesses in various industries, allege that the three individual defendants used various corporate entities they controlled (which the Court collectively refers to as "IPA" unless otherwise required) in a pattern of racketeering activity that swindled the plaintiffs into purchasing expensive but unnecessary or worthless business management and tax consulting services. *See* 18 U.S.C. 1962(c). The defendants have moved for summary judgment on the basis that *res judicata* bars the claims of eight plaintiffs. But as will be seen, the prior judgments on which the defendants base their motion do not bar the plaintiffs' RICO claim; the defendants were not parties to the prior cases and the prior judgments in any event are a mixed bag that does not support the premise of the motion, namely, that the plaintiffs have already litigated, and lost, the claim they assert in this case. For these reasons and as more fully set forth below, the defendants' motion for summary judgment is denied.

**BACKGROUND**

This civil RICO action was filed on March 13, 2007, by 21 small businesses (or their owners) across the country, against John Burgess, Tyler Burgess, and Gregg Steinburg, as well as the various IPA companies and certain other individuals. Currently, sixteen plaintiffs remain,

and the defendants are the two Burgesses (who are father and son) and Gregg Steinburg; they are all owners and/or officers of the IPA companies. With apologies to Mr. Steinburg, the Court will refer to the individual defendants in this case collectively as "the Burgesses" so as to distinguish them from the IPA plaintiffs in the state court actions that give rise to the *res judicata* claims this order addresses.

Eight of the plaintiffs in this case were sued by IPA in several state court cases at various times, most after this lawsuit commenced, for total or partial nonpayment of fees due under their consulting contracts. Pursuant to a forum selection clause in the contracts, the lawsuits were filed in the Circuit Court of Lake County, in the Nineteenth Judicial Circuit of Illinois. The cases were all of the type subject to mandatory arbitration under Illinois Supreme Court Rule 86 as implemented by the Nineteenth Judicial Circuit. Under that Court's Local Rule 17.01(c), "all civil actions, except confessions of judgment on promissory notes, will be subject to mandatory arbitration if each claim is exclusively for money in an amount exceeding $10,000 but not exceeding $50,000, exclusive of interest, costs, and attorneys' fees." Any party who appears for the mandatory arbitration hearing may "reject" the award and petition for trial under Supreme Court Rule 93.

On May 8, 2007 (just months after this RICO suit was filed), the IPA entities[1] filed suit as follows: (1) 07 AR 519 by IPA and ITA against DePacto, Inc.; (2) 07 AR 533 by ITA-IS against DePacto, Inc.; (3) 07 AR 554 by IPA and ITA against BMGI; (4) 07 AR 720 by IPA against IRG. These three defendants—DePacto, BMGI, and IRG—were not plaintiffs in the RICO suits at the time they were sued, but before IPA sued them in state court, they had notified IPA of their intent to join the RICO case pursuant to an amended complaint.

---

[1] International Profits Associates, Inc., ("IPA"); Tax Advisors, Inc. ("ITA"); and ITA Implementation Services, Inc., ("ITA-IS").

In August 2007 the RICO complaint was amended, bringing the number of plaintiffs to 40. A motion to dismiss was denied on December 4, 2007 (*see* Dkt. # 70). A month later, on January 14, 2008, IPA sued all 40 RICO plaintiffs and their then-attorney, Robert Reda, for defamation, based on the publication of the Amended Complaint. Reda then resigned from representing the RICO plaintiffs to avoid a conflict of interest. Subsequently, some efforts were made to negotiate a global settlement of the RICO and defamation suits, but no settlement was reached. The defamation case is now stayed.

On February 13, 2009, IPA filed more collection suits in Lake County against various RICO plaintiffs. The IPA entities[2] filed suit as follows: (1) 09 SC 1569, a small-claims case by IPA against Compsolutions VA, Inc.; (2) 09 AR 356 by ITA against Compsolutions; (3) 09 AR 355 against Jeffrey and Lisa Handley by IPA, ITA, and AA; (4) 09 AR 357 by IPA against Tring Corporation; (5) 09 AR 358 by IPA against Robert Chamberlain; (6) 09 AR 359 by IPA against Amari Company, Inc.  All told, then, after the RICO case was filed, there were 10 lawsuits by IPA entities filed against eight RICO plaintiffs filed in Lake County, all of them subject to mandatory arbitration except for a single small-claims court filing.

There is yet one more state court law suit necessary to complete the picture, this one filed before the filing of the RICO suit: number 06 AR 3, a contract claim by IPA against Central Radiator Cabinet Co., which became an original plaintiff in the RICO suit—and which is not targeted by the Burgesses' *res judicata* motion. The Central Radiator case was consolidated with the four 2007 cases (two against DePacto, and one each against BMGI and IRG); these five cases collectively will be called the "2007 cases." Central Radiator is the only RICO plaintiff that attempted to mount a counterclaim in state court. Its original class-action counterclaim, for

---

[2] Now including Accountancy Associates, LLC ("AAL").

3

consumer fraud, breach of fiduciary duty, and breach of contract, was dismissed, but evidently it was re-pled. IPA moved to dismiss or to abate the counterclaim; the motion to dismiss was denied, but the court granted the defendant's request for "a plea in abatement."[3] In its June 7, 2007 order, the Court abated the counterclaim of Central Radiator while "leaving it open to renew the suit in another place or forum or at another time."

The defendants in the 2007 cases (again, the plaintiffs in this case) moved under Illinois Code of Civil Procedure Rule 2-619(a)(3) to stay the consolidated lawsuits pending the outcome in the RICO action. Under that rule, a case may be voluntarily dismissed or stayed if "there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3); *Kellerman v. MCI Telecommunications Corp.*, 493 N.E.2d 1045, 1053 (Ill. 1986). Although the RICO suit was pending against only John Burgess, Tyler Burgess, and Gregg Steinburg as individuals, and the state-court plaintiffs were the IPA companies themselves, the state defendants argued that their federal RICO action was "between the same parties" because the individuals controlled the entities and had identical interests with respect to the litigation. The state defendants further argued that they could not obtain complete relief in the state cases because the court would not allow their counterclaims. In support, the state defendants attached an order showing that the court had granted IPA's motion to abate Central Radiator's counterclaims for fraud and misrepresentation but "leaving it open to renew the suit in another place or forum or at another time."

---

[3] The Illinois Code of Civil Procedure does not provide for the abatement of actions, but as a general matter, abatement is the "suspension or defeat of a pending action for a reason unrelated to the merits of the claim." Black's Law Dictionary (9th ed. 2009) ("abatement"); *see id.* ("plea") ("A defendant who successfully asserts a plea in abatement leaves the claim open for continuation in the current action or reassertion in a later action if the defect is cured."). It is clear from the context that Central Radiator's claim was not stayed (or "suspend[ed]") but rather was dismissed with leave to refile at a more appropriate time and/or in a more appropriate forum. The one-sentence order granting abatement does not explain the Court's reasoning.

In response to the motion to stay, the IPA companies argued that the RICO case involved different claims and parties than their state-court collections actions. The Circuit Court agreed and denied the motion to stay the 2007 cases. The certified Bystander's Report (a summary of the proceedings prepared by the parties and certified by the court) of the court's ruling reflects that the circuit court determined that the two actions did not involve the "same parties" because the state plaintiffs—the IPA companies—were not named as defendants in the RICO action. The state defendants appealed the ruling and lost. The appellate court reasoned that the state defendants did not present clear and convincing evidence that the federal defendants (Burgess et. al) controlled the state plaintiffs (IPA) for purposes of the "same parties" inquiry. That decision was issued on July 23, 2008; thereafter, the 2007 cases proceeded in state court.

After IPA filed the 2009 cases, the state court defendants—by then with a new attorney, replacing Mr. Reda—tried moving for a stay again, on December 28, 2009. In response the state-court plaintiffs moved for default judgment, arguing that the defendants' answers had been due on December 28, and they had not been given leave to otherwise plead. (Upon withdrawal of the state defendants' prior attorney in November, the court had ordered the defendants to answer the complaints by December 28). The court ultimately denied the motions to stay, holding that they were not timely. The court also denied the motion for default judgment and ordered the defendants to answer the complaints. Only one appeal from the denial of the stay was filed (by Compsolutions, in the small-claims matter), but it was rendered moot before it was decided because the underlying claim proceeded to arbitration without an in-person appearance by Compsolutions, which foreclosed any attempt to reject the arbitration award that it was ordered to pay to IPA. Accordingly, the 2009 suits, like the 2007 suits, proceeded in state court while the RICO action continued in this Court.

The state defendants did not seek any affirmative relief in the state court actions, such as a refund of the moneys they already had paid to IPA, whether because their RICO suit was pending, or because the circuit court had granted abatement of Central Radiator's counterclaim. All of the state defendants defended the collections suits on the grounds of fraud, however, and it is these assertions that give rise to the Burgesses' *res judicata* motion. Each answer asserts an affirmative defense of fraud in the inducement and sets forth the manner in which the IPA companies allegedly scammed the state defendants/RICO plaintiffs into contracting for useless consulting services. Each case proceeded to a bench trial, and in each case, the court (the same judge in every case) rejected (not always, but usually, explicitly) the affirmative defense of fraudulent inducement. However, that did not result in total victory for the IPA plaintiffs by any means. Instead, the judgments were a mixed bag, as follows:

- The court entered judgment for defendant Amari and against IPA "based upon Plaintiff's failure to provide a consultant knowledgeable with Defendant's business and lack of progress on the agreed upon work product." IPA recovered nothing.

- The court entered judgment for defendant BMGI and against IPA because the apparently drunk, hungover, or just plain ineffective consultant provided by IPA "did not productively work the hours invoiced and caused substantial delays and disruptions . . . . Considering the project has already exceeded the anticipated hours, the performance issues concerning [the consultant] and that several components of the engagement had not been completed, no further funds are due." The court entered judgment for ITA and against BMGI, though, awarding ITA $11,436.85 for performing on the contract.

- The court entered judgment for ITA and against Compsolutions for its performance on the contract. IPA also won a judgment against Compsolutions for $4,099.23 in the small-claims case, when Compsolutions (located in Richmond, Virginia) did not appear at the Lake County arbitration hearing.

- The court entered judgment for IPA against DePatco for $47,431.79, concluding that IPA had performed and DePatco had approved the performance. However, the court denied all relief to ITA on its claim for $20,000 because "ITA did not fully perform its obligations."

- The court awarded IPA $4,000 against the Handleys (of Handley Heat & Air) for its performance on the contract. The court denied all relief to AAL on its claim for $10,250, and granted judgment for the Handleys, finding that AAL had not performed the promised services.

- The court entered judgment for IPA in the amount of $3,020.87 against IRG, but it disallowed billings of $16,317.61 for IPA's failure to perform.

- The court entered judgment for IPA against Robert Chamberlain (of A-1 Factory Direct) in the amount of $19,005.81, which is only half of what IPA sought for its performance.

- The court denied all relief to IPA in its action against Tring for $22,296.73, concluding that the IPA consultant "delivered partially complete projects, did not complete required training, and failed to complete succession planning, rendered the work performed by the consultant insufficient to satisfy the requirements of the contract."

In sum, then, the IPA plaintiffs obtained some kind of judgment against six defendants, but did not win a complete recovery against any defendant except Compsolutions. With respect to the Handleys, IRG, and Chamberlain, the recovery was a mere fraction of what the IPA entity claimed it was owed. The IPA plaintiffs won nothing from Amari and Tring. All of these judgments were entered in the first half of 2011.

A number of defendants appealed; the appeals have all been resolved. ITA's judgment against BMGI was affirmed, and the appellate court determined that BMGI had failed to prove fraud in the inducement. The same ruling was made as to DePatco's appeal from the judgment for IPA and IRG's appeal from the judgment for IPA. Compsolution's appeal was dismissed as moot, as described above, and the appellate court found that Chamberlain had not perfected an appeal as to the judgment against him and in favor of IPA; his appeal was limited to review of the trial court's denial of the motion to stay proceedings. The appeals were all decided between November 2011 and February 2012. That brings this history up to date.

**DISCUSSION**

The RICO defendants (the Burgesses) move to dismiss this lawsuit as to eight state-court defendants who are RICO plaintiffs: Amari Company; Bradley M. Griffin, Inc.; Compsolutions VA, Inc.; DePatco, Inc.; Handley Heat & Air; Industrial Resource Group LLC (IRG); Robert Chamberlain, doing business as A1 Factory Design; and Tring Corporation, Inc. The Burgesses contend that *res judicata* wholly precludes these plaintiffs' RICO claims; alternatively, they argue that the related doctrine of issue preclusion prevents re-litigation of the issue of fraud. The Burgesses' brief announces that they treat all of these parties as a "single plaintiff" for purpose of their motion, so their arguments do not distinguish among the plaintiffs (nor do they acknowledge the varied state-court results).

### A.     Procedural Considerations

The defendants move to "dismiss" the case based on Federal Rule of Civil Procedure 12(c). Of course, that is not the type of motion contemplated by Rule 12(c), which allows either party to request judgment on the pleadings, not dismissal. When *res judicata* is pleaded as an affirmative defense in response to a complaint, a Rule 12(c) motion is an appropriate way to adjudicate the defense. *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) ("Since *res judicata* is an affirmative defense, the defendant should raise it and then move for judgment on the pleadings under Rule 12(c)."). However, this procedure works only "[w]hen the complaint itself contains everything needed to show that the defendant must prevail on an affirmative defense." *See Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 665 (7th Cir. 2011). This is because a court reviews a Rule 12(c) motion as it would a motion to dismiss under Rule 12(b)(6); it must take all well-pleaded allegations as true and draw all reasonable inferences in favor of the non-moving party. *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1073 (7th Cr. 2013). Here,

8

however, the non-moving party, the plaintiffs, did not plead any facts related to prior lawsuits, nor did the RICO defendants supply any "well-pleaded allegations" in asserting their affirmative defense; they simply stated that the plaintiffs' claims were barred by the doctrine of *res judicata*. Clearly, then, the defense cannot be resolved "on the pleadings," and the defendants recognize this by submitting material outside the record in order to flesh out their defense.

The plaintiffs argue that the defendants' reliance on materials outside the pleadings—state court pleadings and judicial orders and opinions—require conversion of the Rule 12(c) motion into a motion for summary judgment. In fact the plaintiffs responded to the motion as if it were a motion for summary judgment, complete with a Local Rule 56.1 statement of material facts, an affidavit, and a raft of exhibits. Clearly, the Court cannot resolve the motion without reference to those materials and the defendants' exhibits. Given the record that both parties have created, the Court agrees that converting the motion to one for summary judgment is the appropriate course of action pursuant to Federal Rule 12(d), which provides: "If . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." As the plaintiff have already responded to the motion as one for summary judgment, and the defendants have made their record,[4] neither party will be prejudiced by this Court treating the motion as one for summary judgment. *See*

---

[4] The plaintiffs object to the defendants' failure to comport with the local rules for filing summary judgment and also to the defendants' failure to authenticate their exhibits. It is true that only admissible evidence can be considered with a summary judgment motion, but all of the defendants' evidence comprises judicial decisions and pleadings—public records that are subject to judicial notice under Federal Rule of Evidence 201. As for the failure to file the Local Rule 56.1 statement of facts, the defendants did not style their motion as one for summary judgment and no such statement was required; their failure to clearly set forth the facts on which they seek judgment under Rule 12(c) can only work against them; it did not prejudice the plaintiffs, whose response is comprehensive.

*Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 713-14 (7th Cir. 2013); *Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 885-86 (7th Cir. 2005). Indeed, it was a motion for summary judgment the defendants sought, and received, leave to file; their styling of the motion as a "Rule 12(c) motion to dismiss" is a mystery. Accordingly, the Court acts under Rule 56, and not Rule 12, in resolving the motion.

### B.    Jurisdiction

As always the court first must consider its own jurisdiction, and in this case the overlap of issues between the state lawsuits and this RICO case, brought to light by the defendants' motion, raises the specter of the *Rooker-Feldman* doctrine as well as the principles of *res judicata*.   The *Rooker-Feldman* doctrine deprives federal courts of jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Because it impacts subject-matter jurisdiction, this court is obligated to consider *sua sponte* whether the Rooker-Felman doctrine might apply.

Like *res judicata* and other preclusion doctrines, the *Rooker-Feldman* doctrine concerns itself with "the respect one court owes to an earlier judgment." *GASH Associates v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993). *Res judicata* is derived from the Full Faith and Credit statute, whereas Rooker-Feldman is the embodiment of the principle that federal district courts have only original jurisdiction, and that appellate jurisdiction over the decisions of state courts resides only in the state appellate courts and, in some cases, the Supreme Court of the United States. *See id.* To distinguish between the two doctrines, the Seventh Circuit has explained:

> "The Rooker–Feldman doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, *albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party*? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* (emphasis added).

This case is of the latter type: the plaintiffs are not seeking to set aside the state court judgments; indeed, their federal lawsuit was filed *before* the state court suits. It is clear that their RICO action "denies a legal conclusion that a state court has reached," namely, whether they owed the defendants payment on the various consulting contracts (because of fraud or otherwise), but the claim is independent of the state-court actions. And it cannot be said that "the state court's decision is the source of the harm that the federal suit is designed to redress"; the plaintiffs were aggrieved long before. *Simmons v. Gillespie*, 712 F.3d 1041 (7th Cir. 2013).[5] Therefore, the parties have appropriately framed their arguments under the doctrines of preclusion, not *Rooker-Feldman*, and the Court has subject-matter jurisdiction.

### C. *Res judicata* (Claim Preclusion) Defense

The judgments that the defendants rely upon to bar the plaintiffs' claims all come from the Circuit Court of Lake County, Illinois, and the Illinois Appellate Court for the Second District. Thus, this Court will apply Illinois law to the *res judicata* defense. *See Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007) ("We apply the preclusion law of the state that rendered the judgment to determine whether *res judicata* controls this case.")

Under the doctrine of *res judicata*, a final judgment on the merits in one case acts as a bar to a second suit between the same parties involving the same cause of action. *See River Park,*

---

[5] However, when it comes to plaintiffs' damages—an issue not clearly presented in the instant motion—both parties are advised to give consideration to the effect of the *Rooker-Feldman* doctrine.

*Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998). For the doctrine to apply, three requirements must be satisfied: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Id.* The bar extends beyond matters actually decided to include those matters that could have been decided in the first lawsuit to proceed to judgment.[6] *Id*. In this case, the parties primarily dispute whether the RICO case involves the same cause of action and the same parties.

### 1. Identity of the Parties

The RICO defendants are in the curious—inappropriately inconsistent, the plaintiffs say—position of arguing in this Court that they are functionally equivalent to the IPA entities. IPA took a directly contrary position in state court when confronted with the motion to stay proceedings in light of this lawsuit. There, the state court defendants (plaintiffs here) argued, and the state court agreed, that IPA and the Burgesses were *not* one in the same. Our plaintiffs took a different position in state court, too, but as the non-movants here, they have escaped the potential contradiction because they do not have argue about every element of the *res judicata* test. The defendants, however, must prove every element, including the identity of the parties, and their current argument conflicts with what they—or, under their current view, their privies—said on the same topic in state court. As the plaintiffs argue, this subjects the defendants to the doctrine of judicial estoppel.

---

[6] For this reason, the plaintiffs' argument that they are home free because Illinois does not have a compulsory counterclaim rule misses the mark. Whether counterclaims are permissive or mandatory is irrelevant to the scope of the preclusive effect of a final judgment. *Corcoran-Hakala v. Dowd*, 840 N.E.2d 286, 293-294 (Ill. App. Ct. 2005). Under Illinois law, any claim that could have been brought, whether it had to be or not, is barred by *res judicata* if the doctrine applies. *See id*.

Judicial estoppel, an equitable doctrine, prevents a party who successfully litigates one position from later arguing the opposite position in another proceeding. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 495 (7th Cir. 2011). Judicial estoppel is "invoked at the court's discretion," but three general principles guide the inquiry: "(1) whether the party's later position was 'clearly inconsistent' with its earlier position; (2) whether the party against whom estoppel is asserted in a later proceeding has succeeded in persuading the court in the earlier proceeding; and (3) whether the party 'seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *In re Airadigm Communications, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010) (citations omitted). In short, a litigant is not entitled to assail the integrity of the judiciary by prevailing twice on opposite theories. *See id.*

That is precisely what the Burgesses are attempting to do here.[7] In state court, where IPA and its affiliates were angling for speedy judgments on their collection claims (perhaps for the very purpose of trying to use them here to preclude the RICO claim), and deploring the state-court defendants' motions to stay as mere delay tactics, the companies argued that they were distinct from the Burgesses and that they were uniquely subject to a forum selection clause that prevented them, but not the Burgesses, from litigating outside of Lake County. IPA won that argument, and as a result, its state-court suits proceeded to judgment under the relatively quick arbitration-and-rejection procedure of the Nineteenth Judicial Circuit. Now, however, the defendants insist that they are legally the equivalent of the IPA entities, and cannot be subject to redundant litigation in this Court. Their sole, and half-hearted, argument against judicial estoppel is that, at the time they argued that the parties were different, they really were, but now, they are not, because the lineup of RICO defendants and their roles within the IPA corporate structure

---

[7] The Court is not ascribing any *mens rea* to the defendants, just error.

now versus then has changed. This confusing argument—without the support of any affidavit or other evidence—does not justify the about-face the Burgesses have made on this issue.

This Court need not re-determine whether there is an identity of the parties; in arguing that the state court lacked grounds for staying the collections cases, the Burgesses insisted that another court address that issue first. Whatever the merits of their position, this Court will not hear the defendants' argument against their own prior stance, which prevailed in state court. The Court is not bothered by the different purpose of the inquiry—in state court, staying the case; here, applying *res judicata* principles—because the substance of the argument is indistinguishable although the consequence is different. Nor does it matter that the party advancing the argument in state court was IPA and here it is the Burgesses. The Burgesses received the benefit of the argument in state court; whether they were listed in the caption or not, their legal and financial interests were the same as IPA's (as they now admit). And given their current position that they are in total privity with the IPA entities, they cannot be heard to argue that judicial estoppel does not apply because a nominally different party (their corporate counterparts) succeeded on the argument in state court.

Moreover, judicial estoppel "does not come into play only when a party attempts to retreat in a second case from an argument on which it prevailed in a separate earlier case"; it also "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Airadigm Communications, Inc*., 616 F.3d at 662. The defendants are not only changing their story from the prior litigation, they are changing their approach to this lawsuit to date. In their answers to the amended complaint, the defendants would do no more than admit to being employed by the IPA entities. Moreover, throughout the tortured discovery in this litigation, they have taken great pains to emphasize

14

IPA's "*non-party*" status, and to downplay any control over that nonparty when the plaintiffs sought written and oral discovery from the IPA entities and their employees. That emphasis continues in the motions *in limine* currently before the Court, and at the pretrial conference held on April 23, the defendants insisted on prefacing "IPA" with the descriptor "non-party" for purposes of explaining why the companies' possession of documents was insufficient to notify the individual defendants of their existence. In short, the Burgesses have been conducting discovery as though they do not control the IPA entities. The Court will not accept a contrary representation for purposes of this motion. The defendants are estopped from arguing that this case and the Lake County cases are between the same parties or their privies. Therefore, the defendants cannot establish the "identity of the parties" element of the *res judicata* inquiry.

### 2.     Identity of the Claims

In the interest of completeness, the Court also considers whether there is an identity of claims here and in the Lake County cases. Whether the causes of action are identical under Illinois law of *res judicata* is decided exclusively under the "transactional" test, the "same evidence" test having been abandoned. *See River Park*, 703 N.E. 2d at 893. Under this analysis, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id*. Moreover, "the transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *Id*.

Applying this test, and in particular, comparing the plaintiffs' claims in this court with their affirmative defenses as pleaded in the Lake County cases, it is clear that the RICO claims and the fraudulent inducement defenses do arise out of the same group of operative facts. *See,*

*e.g.*, *Matrix IV, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 649 F.3d 539, 548 (7th Cir. 2011) (finding identical claims under the transactional test); *Carr v. Tillery*, 591 F.3d 909, 913-14 (7th Cir. 2010) (finding identical claim despite new legal theory); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 957 (7th Cir. 1997) (plaintiff's RICO and consumer fraud claims should have been raised as defense in state-court foreclosure action). The alleged predicate acts in this case pertain to the IPA companies' consulting engagements with the plaintiffs, including the alleged discrepancies between what was promised and what was delivered. As to each of the plaintiffs in this Court that was a defendant in Lake County, the predicate RICO acts alleged mirror the fraudulent conduct that they alleged as an affirmative defense to the contract claims. *See River Park*, 703 N.E. 2d at 894 ("Perhaps the most telling indication of identity of cause of action in this case, however, is the parallels between the factual allegations of plaintiffs' state complaint and their federal complaint.").

This is no less true because the "identical claim" would have been a defense or a counterclaim in state court, whereas it is an affirmative claim for relief in this action. *See Whitaker*, 129 F.3d at 957; *Koydor v. Am. Express Centurion Servs. Corp.*, 979 N.E. 2d 123 (Ill. App. Ct. 2012); *Ross Advertising, Inc. v. Heartland Bank & Tr. Co.*, 969 N.E. 2d 966, 975 (Ill. App. Ct. 2012). *Res judicata* "bars suits based on facts that would have constituted a counterclaim or defense in the earlier proceeding where successful prosecution of the later action would either nullify the earlier judgment or impair the rights established in the earlier action." *Koydor*, 979 N.E. 2d at 128.

However, there are a number of reasons why applying *res judicata* to bar the plaintiffs' claims would nevertheless be inappropriate in this case even though the claims satisfy the same transaction test. The Illinois Supreme Court has formally adopted section 26 of the Restatement

Second of Judgments, which sets forth exceptions to *res judicata. See Hudson v. City of Chicago*, 889 N.E. 2d 210, 216 (Ill. 2008). The rule against claim-splitting will not apply when:

> (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or
> (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or
> (c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; or
> (d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim; or
> (e) For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course; or
> (f) It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.

Restatement 2d Judgments § 26(1) (1982). The plaintiffs' arguments touch on several of these exceptions.

First, the state court arguably preserved the plaintiffs' claims when it dismissed Central Radiator's counterclaim with the specific admonition that the claim could be brought at a different time or in another forum. *Central Radiator* was consolidated with the 2007 cases, and it was reasonable to infer that the circuit court would not permit other the defendants in those cases to litigate counterclaims where it had granted a plea in abatement as to Central Radiator's fraud-based counterclaims.

Second, whether the RICO plaintiffs could have litigated their conspiracy claim in Lake County is questionable. State courts possess concurrent jurisdiction over RICO claims, but the arbitration division could not hear such a claim. And the difficulty of lodging a massive conspiracy counterclaim in response to relatively minor collections actions is evident. In particular, joining the appropriate number of counterplaintiffs (recall that at its peak this lawsuit contained 40 plaintiffs) could have been unworkable in the context of the collection claims. Each individual defendant maintaining its own RICO conspiracy counterclaim would have been highly inefficient, and, moreover, proving the needed *pattern* of fraud, *see Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 474 (7th Cir. 2007), would have been particularly challenging in that context. Thus it is far from clear that the plaintiffs could have brought their RICO claims in any meaningful way as counterclaims, and certainly not on the scale they have pursued in this case.

Third, there is the question whether the defendants acquiesced to claim-splitting because they are the one who separately brought suit against the eight relevant RICO plaintiffs *after* the RICO suit was filed in this Court. Moreover, they opposed Central Radiator's efforts to interpose a counterclaim for fraud. The bulk of Illinois authority on the question of acquiescence pertains to situations where a defendant fails to object when a plaintiff either simultaneously files separate actions or voluntarily dismisses a suit and later re-files it without objection from the defendants. *See Piagentini v. Ford Motor Co.*, 901 N.E.2d 986, 996 (Ill. App. Ct. 2009) (discussing cases). Here, the plaintiffs did not file separate actions either simultaneously or subsequently; it was the RICO defendants who initiated the other lawsuits after they had been

18

sued.[8] By doing so, they effectively signaled their consent litigate the claim in parts. And as to the one state plaintiff who attempted to litigate a fraud counterclaim in the state court, Central Radiator, the defendants specifically asked for (as an alternative to dismissal) abatement of the counterclaim, which is an explicit agreement to the claims resurfacing at some other time. Even though the defendants are not arguing *res judicata* as to Central Radiator, their explicit acquiescence as to that defendant is consistent with their seeming desire to separate their contract claims from any claims by their opponents.

At bottom, whether by reference to specific exceptions or not, the Court concludes that applying the *res judicata* to bar the eight plaintiffs' claims would be inequitable. *See Nowak v. St. Rita High School*, 757 N.E.2d 471, 477 (Ill. 2001) ("*Res judicata* will not be applied where it would be fundamentally unfair to do so"). The purposes of the *res judicata* doctrine would not be served by barring the plaintiffs from continuing to litigate the case they filed before IPA brought its state-court claims. *See River Park*, 703 N.E. 2d at 896-97 (explaining purposes). They brought a single federal action joining numerous plaintiffs and alleging a pattern of racketeering activity. In the meantime, the IPA entities, invoking the forum selection clause in the consulting agreements, brought their breach-of-contract actions in Lake County and opposed the RICO plaintiffs' attempts to stay adjudication of those claims pending the outcome of this case. The worthy goal of avoiding a multiplicity of claims may have been thwarted, but not by the RICO plaintiffs. Moreover, the Court seriously doubts the state-court defendants' ability to meaningfully join together and assert the RICO conspiracy as a counterclaim, and questions the wisdom of requiring them to do so when they already had that claim pending in federal court.

---

[8] The RICO plaintiffs insist that the state lawsuits were "retaliatory," and the defendants take offense. However, this Court finds the purpose for which the state-court suits were filed irrelevant to the legal analysis of the whether the state-court judgments have preclusive effect. Accordingly, it makes no finding on the subject, and the parties should infer none.

This is not a "parallel cases" scenario where it is appropriate to apply *res judicata*; even in such cases (and it is not clear that these cases are properly viewed as parallel), all the requirements for *res judicata* still must be satisfied. *See Carr*, 591 at 916.

### C.  Issue Preclusion (Collateral Estoppel)

The defendants alternatively argue that the eight state-court defendants are precluded by the doctrine of issue preclusion, or collateral estoppel, from re-litigating the discrete issue of IPA's fraud. The doctrine bars relitigation of an issue that was already decided in a prior case. *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010). It applies when: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." In addition to these threshold requirements, "the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation." *American Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000); *Talarico v. Dunlap*, 685 N.E.2d 325 (Ill. 1997).

The defendants contend that the RICO plaintiffs who asserted the defense of fraudulent inducement in the state-court collections actions are now barred from arguing that the Burgesses committed mail or wire fraud. Clearly they face the same problem with the argument being subject to judicial estoppel: as with claim preclusion, defendants are required to show that they are the same as, or in privity with, a party to the earlier lawsuit. The Court will not reiterate its judicial estoppel analysis; it applies equally to the issue-preclusion argument. Other problems abound.

As to whether the state court cases and this matter present an "identical issue," the plaintiffs point out that their fraudulent inducement defense, a product of Illinois common law, required them to prove the defense by clear and convincing evidence. Here, they submit, they need only prove by a preponderance of the evidence the predicate acts of mail and/ or wire fraud. The distinction is sound. To make out the affirmative defense of fraudulent inducement, a defendant must prove that "the representation was: (1) one of material fact; (2) made for the purpose of inducing the other party to act; (3) known to be false by the maker, or not actually believed by him on reasonable grounds to be true, but reasonably believed to be true by the other party; and (4) was relied upon by the other party to his detriment." *Jordan v. Knafel*, 880 N.E.2d 1061, 1069 (Ill. App. Ct. 2007). Fraudulent inducement, like all fraud under Illinois law, must be established by clear and convincing evidence. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 857 (Ill. 2005); *Linhart v. Bridgeview Creek Development, Inc.*, 909 N.E.2d 865, 870 (Ill. App. Ct. 2009). By contrast, the predicate acts in a civil RICO suit must be proved simply by the preponderance of the evidence. *American Automotive Accessories, Inc. v. Fishman*, 175 F.3d 534, 542 (7th Cir. 1999); *In Re EDC, Inc.*, 930 F.2d 1275, 1280 (7th Cir. 1991); see also *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983) (requiring proof by preponderance of evidence in securities fraud cases).

Given this disparity, it would not be equitable to hold that the plaintiffs are barred from trying to prove fraud by a preponderance of the evidence, when their state-court fraud defense had to be established by clear and convincing evidence. At least in this direction (where the allegedly preclusive issue was decided according to a more exacting standard), the issues cannot be deemed "identical." Or, perhaps it is more apt to say that the state court did not actually

decide this precise issue, where it was called upon to apply a higher standard of proof, and, moreover, did not have to determine whether any "pattern" existed.

Another problem is that in many cases, the state court's conclusions with respect to the fraudulent inducement defense were not necessary to the final judgments. Some of the state-court defendants who lost the fraudulent inducement argument nevertheless prevailed on their contract defenses against IPA; in such cases, losing the fraud argument did not preclude them from prevailing overall. Amari and Tring both lost on the fraudulent inducement defense but won the lawsuits. The Handleys, IRG, and Chamberlain, all prevailed in some aspect of their defenses, despite losing on the fraud issue. Moreover, although the state court addressed the fraudulent inducement defenses raised by Amari, DePatco, Chamberlain, Handley, IRG, and Tring, the issue is vague in the court's written decision as to BMGI and is not addressed at all in the Compsolutions decision. Therefore, this Court cannot conclude as to those two defendants, now RICO plaintiffs, that the issue was actually litigated and decided by the state court.

Where the state court concluded that IPA failed to adequately perform its end of the bargain, the failure of the fraudulent inducement defense was immaterial to the outcome, and there can be no preclusive effect to the conclusion on the fraud issue.  The only cases in which the fraud issue could have been necessary to the judgment are those in which the fraud defense was raised and addressed, and the IPA plaintiffs prevailed. Whatever that universe of cases, it is smaller than eight—the number of RICO plaintiffs against whom the Burgesses now assert issue preclusion. The defendants inexplicably fail to acknowledge, let alone account for, the fact that IPA *lost* many of the state court suits in whole or in part.[9] It is the defendants' burden to

---

[9] The plaintiffs argue that this problem affects the *res judicata* argument as well, but the Court disagrees. *Res judicata* does not depend on who won or lost, or even whether the claims or defenses at issue were actually raised in the prior litigation. Although this Court concluded that

establish that preclusion applies, and this Court has already waded too deeply into the state court records as a result of their failure to address critical elements of issue preclusion. The Court rejects the issue-preclusion argument as to all eight RICO plaintiffs against whom it is asserted.

\* \* \*

For the reasons stated herein, the Court denies the defendants' motion for summary judgment as to all of the RICO plaintiffs against whom the defendants attempt to assert *res judicata* and issue preclusion. However, the Court leaves open the issue—raised in the motions *in limine*—of whether it must limit the damages available to certain plaintiffs so as not to permit any recovery that would directly contradict the state-court judgments to the extent they required payment for services rendered.

Entered: July 2, 2013

_____
John J. Tharp, Jr.
United States District Judge

---

*res judicata* does not apply to the plaintiffs' RICO claims, the decision does not turn on the outcomes of the state-court cases. Winning and losing judgments alike have preclusive effect.